**LAUREL EMPLOYMENT LAW, APC**
William M. Hogg (Cal. SBN 338196)
william@laurelemploymentlaw.com
808 Wilshire Boulevard, Suite 200
Santa Monica, California 90401
Tel: (323) 551-9221; Fax: (310) 654-4093

**ANDERSON ALEXANDER, PLLC**
Austin W. Anderson* (Texas Bar No. 24045189)
Email: austin@a2xlaw.com
William C. ("Clif") Alexander* (Texas Bar No. 24064805)
Email: clif@a2xlaw.com
Lauren E. Braddy* (Texas Bar No. 24071993)
Email: lauren@a2xlaw.com
Carter T. Hastings* (Texas Bar No. 24101879)
Email: carter@a2xlaw.com
101 N. Shoreline Blvd, Suite 610
Corpus Christi, Texas 78401
Tel: (361) 452-1279; Fax: (361) 452-1284

* - *Pro Hac Vice* anticipated

*Attorneys for Plaintiff, Class, and Collective Members*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **TRISHA STANFIELD, Individually and on behalf of all others similarly situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**APPLE INC.,**<br><br>**Defendant.** | **Case No. ____________________**<br><br>**ORIGINAL CLASS & COLLECTIVE ACTION COMPLAINT FOR:**<br><br>**1. FLSA Overtime Violations (29 U.S.C. § 201, *et seq.*); and**<br><br>**2. Failure to Pay Wages Pursuant to the South Carolina Payment of Wages Act (S.C. Code Ann. §§ 41-10-10 *et seq.*)**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff—Trisha Stanfield—brings this action individually and on behalf of all current and former hourly Call Center Employees (collectively, "Plaintiff and the Putative Collective/Class Members"), who worked for Defendant—Apple Inc. ("Apple" or "Defendant")—anywhere in the United States, at any time during the relevant statutes of limitations, through the final disposition of this matter, to recover unpaid overtime compensation, liquidated damages, and attorneys' fees and costs pursuant to the provisions of Sections 207 and 216(b) of the Fair Labor Standards Act of 1938 ("FLSA"), as amended 29 U.S.C. §§ 201–19, and unpaid compensation, liquidated damages, and attorneys' fees and costs pursuant to the South Carolina Payment of Wages Act ("SCPWA"), S.C. Code Ann. §§ 41-10-10 *et seq*.

## I. OVERVIEW

1. This is a collective action to recover overtime wages and liquidated damages brought pursuant to the FLSA, and a class action pursuant to the state laws of South Carolina under FED. R. CIV. P. 23, to recover unpaid wages and other applicable penalties.

2. Plaintiff and the Putative Collective/Class Members are those similarly situated persons who worked for Apple at any time during the relevant time period(s) through the final disposition of this matter, who have not been paid for all hours worked nor the correct amount of wages, including overtime, in violation of state and federal law.

3. Although Plaintiff and the Putative Collective/Class Members have routinely worked (and continue to work) in excess of forty (40) hours per workweek, Plaintiff and the Putative Collective/Class Members were not paid overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

4. Likewise, Plaintiff and the Putative Collective/Class Members worked under forty (40) hours per workweek on occasion and were not fully compensated at their regular rate of pay for all hours worked.

5. During the relevant time period(s), Apple knowingly and deliberately failed to compensate Plaintiff and the Putative Collective/Class Members for all hours worked each workweek and the proper amount of overtime on a routine and regular basis.

6. Specifically, Apple's regular practice—including during weeks when Plaintiff and the Putative Collective/Class Members worked in excess of forty (40) hours (not counting hours worked "off-the-clock")—was (and is) to require the Plaintiff and the Putative Collective/Class Members to perform necessary and indispensable work—preparing their essential computer systems and programs —off-the-clock prior to starting their shift and at the end of their unpaid meal break (collectively, the "Start-Up Work").

7. The effect of Apple's practices were (and are) that all compensable time worked by Plaintiff and the Putative Collective/Class Members was not (and is not) counted and paid; thus, Apple has failed to properly compensate Plaintiff and the Putative Collective/Class Members for all hours worked and has failed to properly compensate them the proper amount of overtime under the FLSA and SCPWA.

8. Apple knowingly and deliberately failed to compensate Plaintiff and the Putative Collective/Class Members for all hours worked and the proper amount of overtime on a routine and regular basis during the relevant time period(s).

9. Plaintiff and the Putative Collective/Class Members did not and currently do not perform work that meets the definition of exempt work under the FLSA or SCPWA.

10. Plaintiff and the Putative Collective/Class Members seek to recover all unpaid overtime compensation, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), and to recover all unpaid straight time and other damages owed under the state laws of South Carolina as a class action pursuant to FED. R. CIV. P. 23.

11. Plaintiff also prays that all similarly situated workers (Putative Collective Members) be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

12. Plaintiff also prays that the Rule 23 class is certified as defined herein, with Plaintiff Stanfield designated as the Class Representative of the South Carolina Class.

## II.
## THE PARTIES

13. Plaintiff—Trisha Stanfield ("Stanfield")—was employed by Apple in Florida and South Carolina during the relevant time period(s). Plaintiff Stanfield did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[1]

14. The FLSA Collective Members are those current and former hourly call-center employees who were employed by Apple, anywhere in the United States, at any time from May 4, 2023, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Stanfield worked and was paid.

15. The South Carolina Class Members are those current and former hourly call-center employees who were employed by Apple, in the State of South Carolina, at any time from May 4, 2023, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Stanfield worked and was paid.

16. Defendant Apple Inc. ("Apple") is a domestic for-profit corporation with its principal place of business and corporate headquarters located at One Apple Park Way, Cupertino, California 95014. Apple may be served through its registered agent for service of process: **C T Corporation System, 330 N. Brand Boulevard, Suite 700, Glendale, California 91203**.

## III.
## JURISDICTION & VENUE

17. This Court has federal question jurisdiction over Plaintiff's claims under the FLSA, 29 U.S.C. §§ 201–19, pursuant to 28 U.S.C. § 1331.

18. This Court has supplemental jurisdiction over the additional South Carolina state law claims pursuant to 28 U.S.C. § 1367 because they are so related to Plaintiff's claims under the FLSA that they form part of the same case or controversy.

19. Plaintiff has not entered into an arbitration agreement that would affect the Court's subject-matter jurisdiction.

20. This Court has general personal jurisdiction over Apple because California

[1] The written consent of Trisha Stanfield is attached hereto as Exhibit "A."

qualifies as its home state. Apple maintains its principal place of business and corporate headquarters in Cupertino, California, which is located within this District and Division.

21. Venue is proper pursuant to 28 U.S.C. § 1391(b) in the Northern District of California because Apple's principal place of business and corporate headquarters are located in Cupertino, California, which is located within this District and Division. Apple is therefore deemed to reside in this District pursuant to 28 U.S.C. § 1391(c)(2), and a substantial part of the events or omissions giving rise to the claim—including Apple's corporate decisions regarding the pay practices at issue—occurred in this District.

## IV.
## BACKGROUND FACTS

22. Apple is one of the largest technology companies in the world, designing, manufacturing, and selling consumer electronics, computer software, and online services.[2] Apple operates retail stores, online stores, and provides technical support services to its customers throughout the United States and globally.

**Plaintiff and the Putative Collective/Class Members are Similarly Situated**

23. To provide its services, Apple employed (and continues to employ) numerous hourly, non-exempt call-center employees—including Plaintiff and the individuals that make up the putative collective and class.

24. Plaintiff and the Putative Collective/Class Members were employed by Apple as hourly, non-exempt call-center employees who were not paid for all hours worked, including hours worked in excess of forty (40) hours each workweek.

25. Plaintiff and the Putative Collective/Class Members' job duties include providing remote customer support services to Apple's customers, troubleshooting hardware and software issues, answering customer inquiries by telephone, and resolving customer service requests.

26. While exact job titles may differ, these hourly, non-exempt employees were subjected to the same or similar illegal pay practices for similar work.

27. Importantly, none of the FLSA exemptions relieving a covered employer (such as

[2] https://www.apple.com/(last visited April 29, 2026).

Apple) of the statutory duty to pay its employees overtime at one and one-half times the regular rate of pay apply to Plaintiff or the Putative Collective/Class Members.

28. Plaintiff Stanfield was employed by Apple as a Tech Support Advisor from approximately August 2015 until July 2025. Throughout her employment, Plaintiff Stanfield worked remotely from her home. From approximately August 2015 until October 2024, Plaintiff Stanfield worked from her home in Hudson, Florida. From approximately October 2024 until the end of her employment in July 2025, Plaintiff Stanfield worked from her home in Charleston, South Carolina.

29. Throughout her employment, Apple paid Plaintiff Stanfield an hourly rate of approximately $25.50 per hour.

30. During their respective employment with Apple, Plaintiff and the Putative Collective/Class Members were scheduled to work, and did work, five (5) days a week, and approximately eight (8) hours per day for a forty (40) hour work week—these are referred to as their "on-the-clock" hours.

31. In addition to their on-the-clock hours, Plaintiff and the Putative Collective/Class Members regularly worked (and continue to work) anywhere from twenty-five (25) to fifty (50) minutes "off-the-clock" each week and were (and are) not compensated for that time due to the unpaid Start-Up Work.

32. Because Plaintiff and the Putative Collective/Class Members were scheduled to work—and did work—forty (40) hours a week each week, this additional off-the-clock Start-Up Work was work performed in excess of forty (40) hours a week and constitutes unpaid overtime hours.

33. Plaintiff and the Putative Collective/Class Members are similarly situated with respect to their job duties, their pay structure, and the policies (and practices) of Apple resulting in the complained of FLSA and SCPWA violations.

34. Plaintiff and the Putative Collective/Class Members are similarly situated with respect to their job duties—that is, they all provide remote customer services such as technical support, account support, or sales support to Apple's customers throughout the United States.

35. Plaintiff and the Putative Collective/Class Members are similarly situated with respect to their pay structure in that they are all paid on an hourly basis and are required to perform Start-Up Work off-the-clock prior to clocking in for their shifts.

36. Plaintiff and the Putative Collective/Class Members are similarly situated with respect to Apple's policies (and practices) resulting in the complained of FLSA and SCPWA violations.

**Unpaid Start-Up Work**

37. Plaintiff and the Putative Collective/Class Members were not (and continue to not be) compensated for all the hours they worked for Apple as a result of Apple's corporate policy and practice of requiring all call-center employees to be ready to take their first phone call within minutes of clocking in.

38. Specifically, Plaintiff and the Putative Collective/Class Members were (and continue to be) required to perform integral and indispensable tasks before clocking in. The Start-Up Work was necessary to prepare for their shifts and allow them to begin taking calls after clocking in. The Start-Up Work includes turning on their computers and waiting for them to boot up; logging into Apple's secure network; opening and logging into the Apple Connect Virtual Private Network ("VPN"); opening and logging into Apple's timekeeping platform (Workday or, in earlier periods, ADP); opening and logging into client-specific call-handling and auxiliary systems including iLog and Core; and reading emails.

39. The Start-Up Work can take anywhere from five (5) to fifteen (15) minutes before Plaintiff and the Putative Collective/Class Members clock in for their shift—each day that they work.

40. After their unpaid meal break, Plaintiff and the Putative Collective/Class Members are also required to log back into their systems before they can clock in to resume their shift. This post-meal-break Start-Up Work typically requires approximately five (5) additional minutes of off-the-clock work.

41. In weeks in which Plaintiff and the Putative Collective/Class Members worked fewer than forty (40) hours, the unpaid Start-Up Work qualified as unpaid straight time.

42. Because Plaintiff and the Putative Collective/Class Members were scheduled to work—and did work—a forty (40) hour week each week, instances in which they worked fewer than forty (40) hours were limited to weeks in which they did not work their full scheduled shift, including weeks when holidays, illness or vacation occurred. However, weeks in which Plainitff and the Putative Collective/Class Members did not work their scheduled forty (40) hours were the exception and occurred on a limited basis.

43. In weeks in which the Plaintiff and the Putative Collective/Class Members worked forty (40) or more hours, the unpaid Start-Up Work qualified as unpaid overtime.

44. Because Plainitff and the Collective/Class Members worked a scheduled forty (40) hour week each week, and performed this unpaid Start-Up time every day they worked, multiple times a day, Plaintiff and the Collective/Class Members were not paid for all of their overtime hours on a weekly basis. The unpaid Start-Up time should have been paid to Plaintiffs and the Collective/Class Members at time and a half their regular rate of pay each week.

45. Apple required (and continues to require) Plaintiff and the Putative Collective/Class Members to be ready to accept their first call within five (5) minutes of clocking in, both at the start of their shift and after clocking back in at the end of their meal break.

46. Specifically, Plaintiff Stanfield was instructed by her supervisor that she was required to be logged in and ready to take calls within five (5) minutes of her scheduled shift start time. To meet this requirement, Plaintiff Stanfield was required to begin her Start-Up Work at approximately 7:45 a.m.—fifteen (15) minutes before her scheduled 8:00 a.m. shift start—to ensure her computer, the Apple Connect VPN, the Workday or ADP timekeeping system, and Apple's call-handling systems were stabilized in time for her to begin taking calls.

47. If Plaintiff and the Putative Collective/Class Members did not complete their Start-Up Work before clocking in, they would not be prepared to take phone calls by their shift start time, and they could be (and often were) subject to discipline in the form of "coaching" or verbal warnings.

48. Apple monitored Plaintiff and the Putative Collective/Class Members' login times through its computer systems and timekeeping platform. If Apple's systems showed that Plaintiff

and the Putative Collective/Class Members were not logged in and ready to take calls on time, they would receive coachings or verbal warnings, which could lead to further discipline including termination.

49. Some of the Plaintiff and the Putative Collective/Class Members' Start-Up Work had to be performed before Plaintiff and the Putative Collective/Class Members could even access the clock in program.

50. Specifically, turning on the computer, logging into Apple's secure network, and logging into the Apple Connect Virtual Private Network had to be performed before the Plaintiff and the Putative Collective/Class Members could log into the Workday or ADP timekeeping program.

51. Even though Apple knew the Plaintiff and the Putative Collective/Class Members had to perform this work prior to even being able to access the clock in program, Apple does not credit them time for this work.

52. On information and belief, Apple considers time spent turning on the computer, logging into the desktop, and logging into the Apple Connect Virtual Private Network and other similar security programs to be non-compensable work.

53. However, it was only after turning on the computer, logging in to the computer, and then logging into all of Apple's security programs, Plaintiff and the Putative Collective/Class Members could access their programs and databases.

54. Plaintiff and the Putative Collective/Class Members were required by Apple to open and stabilize all of their programs and databases—including iLog, Core, and other client-specific software—prior to going active on the dialer program.

55. Should a Plaintiff or Putative Collective/Class Member go active on the dialer program and begin taking calls before the programs were open and stabilized, the Plaintiff or Putative Collective/Class Member would not be able to access information and material critical to help the caller, such as customer account information, product details, billing information, technical support records, or other sensitive information.

56. Because the programs and databases could take several minutes to open and

stabilize, Plaintiff and the Putative Collective/Class Members could not clock in until the programs were open and stabilized; otherwise they could receive discipline for failing to be ready to handle calls within minutes of clocking in.

57. Therefore, the only way to be ready and have completed the Start-Up Work on time, and avoid discipline, is to complete the Start-Up Work off-the-clock and without pay.

58. Apple knew the Start-Up Work took a substantial amount of time and encouraged Plaintiff and the Putative Collecitve/Class Members to perform the Start-Up Work off-the-clock.

59. Although this start-up time is necessary and integral to their job duties, Plaintiff and the Putative Collective/Class Members have not been compensated for this time.

60. As such, Apple required (and continues to require) that Plaintiff and the Putative Collective/Class Members perform the Start-Up Work "off-the-clock" before they clock in.

61. For example, in Plaintiff Stanfield's last full workweek with Apple, she worked her standard schedule of Monday through Friday from approximately 8:00 a.m. to 5:00 p.m. EST, with a one-hour unpaid meal break each day. Each day of that workweek, Plaintiff Stanfield began her Start-Up Work at approximately 7:45 a.m.—fifteen (15) minutes before her scheduled 8:00 a.m. shift start—to ensure her computer, the Apple Connect VPN, and Apple's call-handling systems were stabilized in time for her to begin taking calls. Each day of that workweek, Plaintiff Stanfield also returned approximately five (5) minutes early from her meal break to log back into Apple's systems before clocking back in to resume her shift.

62. As a result of Apple's policies, in Plaintiff Stanfield's last full workweek with Apple, she performed approximately one (1) hour and forty (40) minutes of compensable Start-Up Work—fifteen (15) minutes per day pre-shift plus five (5) minutes per day post-meal-break, across five (5) workdays—for which she received no compensation. Because Plaintiff Stanfield worked her standard forty (40) hours of on-the-clock time that workweek, the additional one (1) hour and forty (40) minutes of Start-Up Work qualified as unpaid overtime under the FLSA. Apple failed to pay Plaintiff Stanfield for those one (1) hour and forty (40) minutes of overtime that week, in direct violation of the FLSA and the SCPWA.

63. As further example, in Plaintiff Stanfield's last partial workweek with Apple, she

worked approximately (3) days but still worked from approximately 8:00 a.m. to 5:00 p.m. EST, with a one-hour unpaid meal break each day. Each day of that short workweek, Plaintiff Stanfield began her Start-Up Work at approximately 7:45 a.m.—fifteen (15) minutes before her scheduled 8:00 a.m. shift start—to ensure her computer, the Apple Connect VPN, and Apple's call-handling systems were stabilized in time for her to begin taking calls. Each day of that workweek, Plaintiff Stanfield also returned approximately five (5) minutes early from her meal break to log back into Apple's systems before clocking back in to resume her shift.

64. As a result of Apple's policies, in Plaintiff Stanfield's last short workweek with Apple, she performed approximately one (1) hour of compensable Start-Up Work—fifteen (15) minutes per day pre-shift plus five (5) minutes per day post-meal-break, across three (3) workdays—for which she received no compensation. Because Plaintiff Stanfield worked less than her standard forty (40) hours of on-the-clock time that workweek, the additional one (1) hour of Start-Up Work qualified as unpaid straight time under the SCPWA. Apple failed to pay Plaintiff Stanfield for the one (1) hour of straight time that week, in direct violation of the SCPWA.

65. As a result of Apple's company-wide policy and practice requiring Plaintiff and the Putative Collective/Class Members to perform their Start-Up Work off-the-clock, Plaintiff and the Putative Collective/Class Members were not compensated for all hours worked, including all hours worked in excess of forty (40) in a workweek at the rates required by the FLSA.

66. Apple was (and continues to be) aware of its obligation to pay Plaintiff and the Putative Collective/Class Members for all hours worked and pay the proper amount of overtime for all hours worked in excess of forty (40) each week but has failed to do so.

67. Apple knew or should have known that it was not (and is not) compensating Plaintiff and the Putative Collective/Class Members for the proper amount of overtime compensation in violation of the FLSA and SCPWA.

68. Apple's actions therefore constitute willful violations under the law and were not made in good faith.

69. Apple knew or should have known that its failure to pay the correct amount of straight time and overtime to Plaintiff and Putative Collective/Class Members would cause, did

cause, and continues to cause financial injury to Plaintiff and the Putative Collective/Class Members.

70. Because Apple did not pay Plaintiff and the Putative Collective/Class Members time and a half for all hours worked in excess of forty (40) in a workweek, Apple's pay policies and practices willfully violated (and continue to violate) the FLSA and SCPWA.

71. Because Apple did not pay Plaintiff and the Putative Collective/Class Members for all straight time worked, Apple's pay policies and practices violated (and continue to violate) the SCPWA.

72. Plaintiff and the Putative Collective/Class Members seek to recover all unpaid overtime, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), and all unpaid straight time pursuant to the SCPWA as a class action pursuant to FED. R. CIV. P. 23.

## V.
## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Collective Action Alleging FLSA Violations)

### A. FLSA COVERAGE

73. The preceding paragraphs are incorporated as though fully set forth herein.

74. The "FLSA Collective" and "FLSA Collective Members" are defined as follows:

**ALL CURRENT AND FORMER HOURLY CALL-CENTER EMPLOYEES WHO WERE EMPLOYED BY APPLE INC., ANYWHERE IN THE UNITED STATES, AT ANY TIME FROM MAY 4, 2023, THROUGH THE FINAL DISPOSITION OF THIS MATTER.**

75. At all material times, Apple has been an employer within the meaning of the FLSA, 29 U.S.C. § 203(d).

76. At all material times, Apple has been an enterprise within the meaning of the FLSA, 29 U.S.C. § 203(r).

77. At all material times, Apple has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in the operation of technology services and commerce

or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that that enterprise has had, and has, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

78. Specifically, Apple is one of the largest technology companies in the world and employs thousands of call-center employees to provide remote customer support services to its customers across the United States, purchases materials through commerce, transports materials through commerce and on the interstate highways, and conducts transactions through commerce, including the use of credit cards, phones and/or cell phones, electronic mail, and the Internet.

79. During the respective periods of Plaintiff and the FLSA Collective Members' employment by Apple, these individuals provided services for Apple that involved interstate commerce for purposes of the FLSA.

80. In performing work for Apple, Plaintiff and the FLSA Collective Members were engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

81. Specifically, Plaintiff and the FLSA Collective Members are (or were) hourly employees who assisted Apple's customers throughout the United States. 29 U.S.C. § 203(j).

82. The proposed collective of similarly situated employees — that is, the FLSA Collective sought to be certified pursuant to 29 U.S.C. § 216(b), is defined in Paragraph 74.

83. The precise size and identity of the proposed collective should be ascertainable from the business records, tax records, and/or employee and personnel records of Apple.

**B. FAILURE TO PAY WAGES AND OVERTIME UNDER THE FLSA**

84. Apple violated the FLSA, 29 U.S.C. §§ 207 and 215(a)(2), by employing individuals in an enterprise engaged in commerce, the operation of interstate customer support services, or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such non-exempt employees for all the hours they worked in excess of forty (40) hours per week at rates at least one and one-half

times the regular rates for which they were employed.

85. Moreover, Apple knowingly, willfully, and with reckless disregard carried out its illegal pattern of failing to pay Plaintiff and other similarly situated employees the proper amount of overtime compensation for all hours worked over forty (40) each week. 29 U.S.C. § 255(a).

86. Apple knew or should have known its pay practices were in violation of the FLSA.

87. Apple is a sophisticated party and employer, and therefore knew (or should have known) its pay policies were in violation of the FLSA.

88. Plaintiff and the FLSA Collective Members, on the other hand, are (and were) less sophisticated employees who trusted Apple to pay them according to the law.

89. The decision and practice by Apple to not pay Plaintiff and the FLSA Collective Members overtime for all hours worked over forty (40) each week was willful, and was neither reasonable nor in good faith.

90. Accordingly, Plaintiff and the FLSA Collective Members are entitled to be paid overtime wages for all hours worked in excess of forty (40) hours per workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

## C. COLLECTIVE ACTION ALLEGATIONS

91. All previous paragraphs are incorporated as though fully set forth herein.

92. Pursuant to 29 U.S.C. § 216(b), Plaintiff brings this action collectively on behalf of Apple's employees who are (or were) similarly situated to Plaintiff with regard to the work they performed and the manner in which they were paid.

93. Other similarly situated employees of Apple have been victimized by Apple's patterns, practices, and policies, which are in willful violation of the FLSA.

94. The FLSA Collective is defined in Paragraph 74.

95. Apple's failure to pay Plaintiff and the FLSA Collective Members overtime compensation at the rates required by the FLSA results from generally applicable policies and practices of Apple, and does not depend on the personal circumstances of Plaintiff or the FLSA Collective Members.

96. Thus, Plaintiff's experiences are typical of the experiences of the FLSA Collective Members.

97. The specific job titles or precise job requirements of the various FLSA Collective Members does not prevent collective treatment.

98. All of the FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated their overtime wages for all hours worked in excess of forty (40) each week.

99. Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

100. Absent a collective action, many members of the proposed FLSA Collective will not likely obtain redress of their injuries and Apple will retain the proceeds of its violations.

101. Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the FLSA Collective and provide for judicial consistency.

102. Accordingly, notice of the action should be promptly sent to the FLSA collective of similarly situated plaintiffs as defined in Paragraph 74.

## SECOND CAUSE OF ACTION
## (Class Action Alleging Violations of the SCPWA)

### A. SCPWA COVERAGE

103. All previous paragraphs are incorporated as though fully set forth herein.

104. The "South Carolina Class" and "South Carolina Class Members" are defined as:

> **ALL CURRENT AND FORMER HOURLY CALL-CENTER EMPLOYEES WHO WERE EMPLOYED BY APPLE INC., IN THE STATE OF SOUTH CAROLINA, AT ANY TIME FROM MAY 4, 2023, THROUGH THE FINAL DISPOSITION OF THIS MATTER.**

105. At all material times, Apple has been an "employer" as defined by the SCPWA. *See* S.C. Code Ann. § 41-10-10(1).

106. At all material times, Plaintiff Stanfield and the South Carolina Class Members were "employed" by Apple as defined within the SCPWA. *See* S.C. Code Ann. §§ 41-10-10 to 110.

107. Plaintiff Stanfield and the South Carolina Class Members are "employees" within the meaning of the SCPWA and are not free from the control and direction of Apple.

**B. FAILURE TO PAY WAGES IN ACCORDANCE WITH THE SCPWA**

108. All previous paragraphs are incorporated as though fully set forth herein.

109. During the course of their employment, Apple agreed to pay Plaintiff Stanfield and each South Carolina Class Member "wages" as defined in the SCPWA to compensate them for labor rendered to Apple. *See* S.C. Code Ann. § 41-10-10(2).

110. Specifically, Apple offered to pay Plaintiff Stanfield and each South Carolina Class Member a set rate for each hour of work they performed for Apple.

111. Plaintiff Stanfield and each South Carolina Class Member accepted Apple's offer.

112. The SCPWA requires employers, like Apple, to "notify each employee in writing at the time of hiring of the normal hours and wages agreed upon, the time and place of payment" and the "employer shall furnish each employee with an itemized statement showing his gross pay and the deductions made from his wages for each pay period." S.C. Code Ann. § 41-10-40(C).

113. The SCPWA also provides employers, like Apple, "shall not withhold or divert any portion of the employee's wages unless the employer is required or permitted to do so by state or federal law." S.C. Code Ann. § 41-10-40(C).

114. Further, "any changes [to] the terms [of wages] must be made in writing at least seven calendar days before they become effective." S.C. Code Ann. § 41-10-30(A).

115. In violation of the SCPWA, Apple willfully failed to provide Plaintiff Stanfield and the other South Carolina Class Members with compliant wage statements for each of their pay periods as required by law because the wage statements failed to include the hours they worked off-the-clock during their pre-shift and post-meal-break Start-Up Work.

116. Apple also willfully failed to pay Plaintiff Stanfield and the South Carolina Class Members all compensation for "wages" due and owing to them, in violation of the SCPWA. *See* S.C. Code Ann. § 41-10-10(2).

117. Specifically, Apple has withheld wages of Plaintiff Stanfield and the South Carolina Class Members for the off-the-clock Start-Up Work performed each day, without

providing advance notice of such withholdings and absent any lawfully sufficient reason for such conduct.

118. In violating the SCPWA, Apple acted willfully, without a good faith basis, and with reckless disregard of clearly applicable South Carolina law.

119. As a direct and proximate result of Apple's willful conduct, Plaintiff Stanfield and the South Carolina Class Members have suffered substantial losses, and continue to suffer substantial losses, and have been deprived of compensation to which they are entitled damages, including monetary damages in the amount of three (3) times the amount of their unpaid wages as well as costs and reasonable attorneys' fees pursuant to the SCPWA. *See* S.C. Code Ann. § 41-10-80.

120. Apple is in possession and control of necessary documents and information from which Plaintiff Stanfield would be able to precisely calculate damages.

121. The proposed class of putative class members sought to be certified pursuant to the SCPWA is defined in Paragraph 104.

122. The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Apple.

**C. SOUTH CAROLINA CLASS ALLEGATIONS**

123. Plaintiff Stanfield and the South Carolina Class Members bring their SCPWA claim as a class action pursuant to FED. R. CIV. P. 23 on behalf of all similarly situated individuals employed by Apple to work in South Carolina since April 29, 2023.

124. Class action treatment of Plaintiff Stanfield and the South Carolina Class Members' claims is appropriate because, as alleged below, all of Rule 23's class action requisites are satisfied.

125. The number of South Carolina Class Members is so numerous that joinder of all class members is impracticable.

126. Plaintiff Stanfield's South Carolina state-law claims share common questions of law and fact with the claims of the South Carolina Class Members.

127. Plaintiff Stanfield is a member of the South Carolina Class, her claims are typical of the claims of other South Carolina Class Members, and she has no interests that are antagonistic

to or in conflict with the interests of other South Carolina Class Members.

128. Plaintiff Stanfield and her counsel will fairly and adequately represent the South Carolina Class Members and their interests.

129. Class certification is appropriate under Rule 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

130. Accordingly, the South Carolina Class should be certified as defined in Paragraph 104.

## VI. JURY DEMAND

131. Plaintiff hereny demands a jury trial on all claims and issues, as she and the other Putative Class/Collective Members are entitled to a jury.

## VII. RELIEF SOUGHT

132. Plaintiff Stanfield respectfully prays for judgment against Apple as follows

a. For an Order certifying the FLSA Collective as defined in ¶ 74;

b. For an Order approving the form and content of a notice to be sent to the FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

c. For an Order pursuant to § 16(b) of the FLSA finding Apple liable for unpaid wages, including unpaid overtime wages, due to Plaintiff (and those FLSA Collective Members who have joined in the suit), and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff (and those FLSA Collective Members who have joined in the suit);

d. For an Order certifying the South Carolina Class as defined in ¶ 104, and designating Plaintiff Stanfield as Representative of the South Carolina Class;

e. For an Order pursuant to the SCPWA awarding Plaintiff Stanfield and the South Carolina Class Members damages for unpaid wages, treble damages, statutory penalties,

and all other damages allowed by law;

f. For an Order awarding the costs of this action;

g. For an Order awarding attorneys' fees;

h. For an Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law;

i. For an Order awarding Plaintiff Stanfield a service award as permitted by law;

j. For an Order compelling the accounting of the books and records of Apple, at Apple's expense (should discovery prove inadequate); and

k. For an Order granting such other and further relief as may be necessary and appropriate.

Date: May 12, 2026

Respectfully submitted,

*/s/ William M. Hogg*
William M. Hogg
**LAUREL EMPLOYMENT LAW**

William C. "Clif" Alexander*
Austin W. Anderson*
Lauren E. Braddy*
Carter T. Hastings*
**ANDERSON ALEXANDER, PLLC**

* - *Pro Hac Vice* anticipated

*Counsel for Plaintiffs, Class, and Collective Members*